Alright, court is back in session. I'm going to address all the judges for the night. Please be seated, thank you. Madam Clerk, please call the third case. 115, 118, 1836 Lutheran School of Theology, Steele, Pennsylvania. Judge Carver, absent. Counsel, you may proceed. Thank you, Your Honor. Good morning, Justices. Counsel, may it please the Court, Damien Gassie on behalf of Lutheran School of Theology. In the second case, for the February 2nd, 2006 date of accident, also referred to in our brief as Carrier B. And while the Commission in this case has issued two decisions, my comments, my arguments will address both of those decisions, because we believe they're against the manifest way of the evidence. And although they relied on different evidence to support the same conclusion... Can I ask a question? Yes, sir. Who do you represent? Lutheran School of Theology, as well as... Well, you don't represent the Carrier, you represent Lutheran School of Theology. They're the only party to this action, aren't they? You didn't have the Carrier made a party, did you? I'm sorry, Your Honor? You didn't have the Carrier made a party to the action, did you? I did not. I don't believe that. And who does your opponent represent? He represents Ismael Marquez. Who represents the Lutheran School of Theology in the other case? A different law firm. But the only thing you're arguing about is... You're not arguing that the claimant is entitled to the benefits he got, are you? You're just arguing about who's supposed to pay for them. Yes, basically, yes. But you both represent the Lutheran School of Theology. So, are you arguing against yourself? You know, we get this all the time. Has a claimant been paid by anybody? Lost time benefits? Yes. I think when two insurance companies fight against each other, as to who's going to pay the claimant, and nobody disputes that the claimant is entitled to payment, somebody ought to be paying penalties. And I mean big time. This is just wrong. You've got two insurance companies that want to fight with each other, fight with each other outside the context of these cases. I don't care how you do it, whether you do it by arbitration or not. But we get this over and over and over again, where two insurance companies who represent the same respondent, fight with each other and nobody pays the claimant. While they're doing it. Payment was made, maybe not exactly at a time when you would believe it should be. We did make payment prior to the end of the case to the claimant, so that he had his lost time benefits. So he's gotten everything that the commission gave him? As far as lost time benefits, yes. So he's owed nothing? On lost time, through the end of the decision. Well what else did he get, other than just TTD?  There's medical expenses, large medical expenses in dispute, Your Honor. So nothing else, no PPD owed to him? No, no, it was a 19-B decision. Okay, but there's a dispute about the medical expenses? There's a dispute as to who should pay, yes. Because of the intervening clause issue? Yes, Your Honor. But there's no dispute about whether Lutheran School of Theology owes it, right? Right. Not based on the evidence in the record. Your Honor, so why shouldn't the petitioner go back to the Industrial Commission or the Workers' Compensation Commission and get penalties for this not being paid? For what not being paid? The medical bill? The medical bill. I mean, it's Jacobo, our case, Jacobo. I mean, you appeal some issue that has nothing to do with what's owed, you've got to pay it. But if Lutheran School of Theology, the employer, owes something for that, right? I guess when petitioner was paid, I did not... First time I'm in this situation, Your Honor... Maybe he'll get off the hook here, who knows, you know, but... I'm aware of your carrier. But Lutheran School of Theology won't, that's for sure. Okay. Is there an avenue for the carrier to intervene in the proceeding? At the commission level? Not that I'm aware of. It'd be the petitioner who would have to name the carrier as a party. As far as I'm aware, there's nothing within the rules of the commission or the act which would allow the carrier to intervene as a party. They're represented for their date of accident by the counsel hired by that particular carrier. Proceed on. Thank you. Although the commission relied on different evidence, we believe it's still based on the same flawed premise, and that is there's anything in the record to support finding that the accident of February 2nd, 2006 caused the petitioner's condition from which he underwent surgery. The commission, in their initial decision, indicated that it was relying on Dr. Fartin as well as Dr. Sherman, and Dr. Shermer, I apologize, and Dr. McHale. In their second decision, they just relied on Dr. Fartin. But the evidence clearly shows an opposite conclusion is clearly apparent. Petitioner, while injured on November 2nd, 2004, had low back pain. He treated, continued to work full duty even though he was under light duty restrictions. There was a recommendation for surgery made at that time, but based upon an IME report, care was denied after that. He continued to work, and the last restriction from any doctor following the 2004 accident was a light duty restriction, not to lift more than 10 pounds. The petitioner, though, continued to work and at times didn't work his full duty job, which is when he actually injured himself. He testified he had pain during that period of time, between the time he no longer sought care and the second accident, and the last doctor's note indicated he was still in pain. Second accident occurs, he isn't lifting something, he falls at work, had a definite accident, definitely increased his pain. But that's where the evidence really ends. It doesn't point to the second accident being the cause for the following treatment and condition. Let me just ask you this. Did the circumstances prevent him from performing his employment responsibilities, hampered his ability to engage in the activities of life, he had new and increased symptoms caused him to seek new medical treatment and to opt for three selective or elective surgeries? So that didn't change at all after the second accident? That's not different from what happened after the first accident? I don't believe the condition did, Your Honor, and here's why in this particular circumstance. There is a change in the complaints of pain. There's no doubt about that. They absolutely did change. His ability to work, though, he worked, he was off work for a while, he worked by duty and he was even released full duty before the ultimate surgery occurred and worked at that level for a while. Structurally, nothing changed, and we only know that because Dr. Kanian saw the two studies and compared the two studies and he's the only person who actually looked at the two studies and compared both of them. He said the surgery that ultimately occurred following the second accident, he needed following the first accident. When it was recommended back in 2005, the January 2005 MRI showed the exact same condition as the other one. He had gone back to work and was able to perform his work without missing any work, right? Until the second accident, is that true? He was working, yes. No question about it. And he didn't seek medical care, and you may be wondering, well, why, if he was in that much pain, didn't he go for care on his own? But the petitioner answered that himself. He wouldn't go because he was told he wasn't entitled to any more treatment. And if you may think that that wouldn't stop a petitioner, this particular petitioner did. Because if you also look at his logic for why he didn't receive immediate medical care after he noticed an increase in symptoms following the second accident, he waited 10 days or almost 2 weeks before going for medical care because his boss was out of town and he thought he had to have permission to go get medical care. So he's going around in pain saying he had to walk differently, at least on the day of the accident and everything, because he thinks he's not entitled to go get medical care until someone tells him he could. Following the first accident, he's still having a lot of pain. He's still having a lot of trouble. He's working through it. Admittedly, I can't deny that. But he doesn't go for medical care because he's been told, you can't at this point. The carrier is the one running the case now from that point, and they told him no more treatment. And apparently his own doctor must have conveyed that to him as well because he said Dr. Korn told him that you were released. He didn't release him. He said you were released. Nevertheless, just to sum up, there's also two doctors, McHile and Fardin, who both opined that his current condition was related to the February 206 accident and not November 24, correct? Dr. McHile's opinions, to back up the claimant's testimony. Dr. McHile stated that the commission backed off that relying on Dr. McHile's opinion because Dr. McHile clearly did not have everything in front of him as far as information concerning the prior accident and the records from treatment as well as the MRI report. They do not rely on Dr. McHile in their second opinion that they issued. Dr. Fardin's opinion on causation, I don't believe, Your Honor, is in evidence. When he testified at the time of trial, he never stated that the 2006 accident, that the subsequent care, the surgeries and everything else was related to the 2006 accident. Now, the commission in their second decision points to Dr. Fardin's report that's attached to a petition for a response to a petition for penalties, but it's not there as substantive evidence. We had objected to that very report previously, and the report was kept out of evidence, which is why Dr. Fardin then came to testify. I don't understand this. The Lutheran School objected to the Lutheran School putting something into evidence? How does that work? How does that happen? How do you do that? Well, Your Honor, my understanding, and I have to admit I did not research this further for today. When I went for ethics as a very young attorney, I was working for an insurance company. I was told I had two clients. I had the name of the person who I was representing, and I had the insurance company, and they were both my clients. While the person I was representing on my appearance was my primary client, I had a responsibility and a duty to my secondary client as well. And what happens when their interests were opposed? What were you supposed to do? Well, I thought that's why they both had attorneys there to represent their interests. No, because the insurance companies weren't parties. You had two attorneys representing the same client. One attorney puts a document in evidence for Lutheran School, and the other attorney for Lutheran School says, I can't figure out how this works. It doesn't make any sense to me. Well, that's the whole reason we took Dr. Kaniyia's depositions, because the other attorney was objecting to the report, which is why we went and got it in the first place. And again, I admit, Your Honor, I did not research the issue because I didn't know it was an issue, that I may be doing something I shouldn't by objecting to another report. I'm not sure you did something you shouldn't. I just don't understand how it can be done. Well, because I thought I had a secondary client as part of it as well, but I know they weren't named on the petition. I thought that's why the two attorneys both were present on that day, and why at times their parties are... You were hired by separate insurance companies because there were two different claim dates and two different cases that happened to be consolidated. Maybe it wasn't a good idea to consolidate them. Possibly not. I don't know. That was done before I... I've been thinking for judicial economy, and it makes sense to consolidate them. For judicial economy, we ought to get rid of this fiction that we've always had and just get the real parties in interest before the courts. That might be true as well. But... I mean, there is a provision for bringing insurance companies into these cases. Yes, there is. But the claimant would have to do it. Absolutely. The Act is very, very specific. When the employer doesn't pay the compensation for which he or she is liable, then the insurance company can be made a party, and the award can be entered against both the insurance carrier and the employer. I mean, the Act provides for it. Right. But... I don't know. Okay, go ahead. But based on the belief that there were two, even though we represent the same main entity, that we were representing some different interests as well, an objection was made. The arbitrator outheld the objection as hearsay. I don't believe there's an opinion from Dr. Farben. I'm not going to believe. I've looked at the record numerous times. I've never found an opinion from Dr. Farben indicating that the February 2, 2006 accident was the cause of this condition. Again, Dr. Benign was the only one who reviewed all the evidence before him, and while the complaints changed, if a person hasn't had it back, I think you would expect the complaints to change. At the time of the 2006 accident, if he's in need of a surgery, is working through a bad back, wants to receive treatment because he's still in pain and feels he can't get it because he's been told he can't get it, then if he hurts, if he falls and hurts himself, I would strongly suspect he's going to have an increase in pain, and that's exactly what happened. What didn't happen, though, was nothing structurally changed in his back. In his actual clinical problem, nothing had changed. He needed the same surgery after the second accident that he needed after the first accident. Nothing had changed, and Dr. Benign is the only one who looked at the films and the only one who addressed the issue, actually. He's the only one that made a definitive statement on that. Based upon the evidence in the case, I believe that the commission should overturn, or this court should overturn the commission's decision and find it to be against the manifest way of the evidence that the petitioner's condition is causally connected to the February 2, 2006 death accident. Thank you. Thank you, counsel. Counsel, you may respond. Good morning, Justices and counsel. For the record, my name is Barry Blumenthal, and I did represent Mr. Marquez in the original and post-actions concerning his two accidents. First, I want to state that there is really no justiciable issue relative to this client. So I... You get paid no matter which... I'm sorry? Your client gets paid no matter which accident it's tagged on to. Exactly. So I have a very, very short dissertation. I have a question for you on Fardin's testimony at the arbitration hearing. It's true Fardin never really said that it was causally related to the second accident, but he did say, if my memory serves me correctly or my notes are good, that the November 3, 2004 accident merely was a temporary exacerbation of his symptoms relating to his pre-existing degenerative condition and that they became symptomatic in 2006. Was that his testimony? I believe so, sir. I believe so. But I also think what he said was... And no evidence of a permanent injury resulting from the 2004 accident. But I think what he... Also, he said that he was taking into account other factors, okay, as to why he felt that the 2006 injury was the major of the two. In any event, I don't think I'm really the proper person to be defending, so to speak, the November 3, 2004 incident. Unfortunately, the attorney who represented the insurance company or Lutheran School, for whatever reason, and I've been given a couple of different reasons why he's not here to defend that particular accident, he's not here, and I don't think I'm the proper person to even get into it. I think that would be his position. He certainly filed what I thought was a very good brief in front of Judge McCain, and I think that's part of your record, so you should have access to that. Basically, that's about all that I have to say on this account. Thank you, counsel. Thank you. Counsel, you may reply. Was I wrong in my assessment of Dr. Farden's testimony at arbitration? No. Or was I correct? No, you're correct. Okay. Dr. Farden did say that counsel made a statement, though, about Dr. Farden's opinion to the February 2, 2006 accident, and again, he didn't testify to that. There's nothing in the record in that concern. He said it became symptomatic, but he also had speculated that there was some MMI reached. Again, Dr. Farden admitted he never saw the films or the studies, and he never even rendered an opinion as to whether the studies had changed between 2005 and 2006. He made a comparison between films from 2002 to 2005. Dr. Farden saw the petitioner years later, and I think if you looked at the rest of the evidence, or if I'm sure you have, I apologize. When looking at the rest of the evidence, you'll see that even Dr. Scherber notes that the petitioner is still having problems as of the time he saw him again in February of 2005, as did Dr. Corn in March of 2005. The petitioner's condition hadn't resolved. It's just whether or not it was causally connected at that point. Well, Farden even went further, though, didn't he? He said he found no evidence of a permanent injury resulting from the November 3, 2004 accident and did not believe that the claimant required additional treatment as a result of that accident. I think is what he said. You may be correct in that. I don't recall exactly, but it was something along those lines, I'm fairly certain. I mean, he was asked, I think the question that precipitated it was, he was asked what caused the claimant's need for surgery performed on July the 19th, 2006, and then he gave the answer. Thank you, John. Thank you, counsel, both, for your arguments. This matter will be taken under advisement. Written disposition shall issue.